Garford M. T. Co. et al. v. Miller's Nat. Ins. Co., 230 Ill. App. 622.

amount sufficient for her comfortable support and maintenance?

The cardinal rule in the construction of a will is that the intention of the testator must govern. In the instant case, we think it clear that the testator intended that whatever sum came to the hands of the trustee for Laura Martin should be paid to her "in person and not upon any written or verbal order nor upon any assignment or transfer thereof by said beneficiary, or by operation of law"; that he intended that the entire fund should be paid her. Under these circumstances, we hold that the funds were not subject to garnishment (*Steib v. Whitehead, supra*), and the court properly discharged the garnishee.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

TAYLOR, P. J., and THOMSON J., concur.

---

Garford Motor Truck Company and R. P. Moss, Appellees, v. Miller's National Insurance Company, Appellant.

## Gen. No. 27,905.

1. INSURANCE—*waiver of defense of failure to prove loss by failure to plead.* In an action on an insurance policy for the cost of repairing damage to an insured truck, the insurer waived the right to defend on the ground of failure of plaintiff to prove that it made proper proof of loss, where plaintiff filed an affidavit of claim with its declaration and defendant filed pleas to the merits without raising any question concerning proof of loss and also filed an affidavit of merits in which no mention was made of failure of the insured to comply with terms of the policy relative to proof of loss.

2. INSURANCE—*insurer has burden of proving affirmative defense under policy.* In an action against an insurance company for the

cost of repairing damages to an insured truck, under a policy which limited the liability of the defendant to the actual cash value of the truck at the time of loss or damage, judgment against the defendant, which introduced no evidence at the trial, will not be reversed for failure of the plaintiff to prove that the actual value of the truck was at least equal to the cost of repairs sued for, where the plaintiff pleaded the policy, the damage to the truck and the cost of the repairs, which were alleged to be fair and reasonable, and defendant filed a special plea alleging the value of the truck was less than the repair bill.

3. INSURANCE—*collision with hole in roadway not collision with "object."* Damage sustained by a motor truck when the wheel thereof struck the abrupt side of a hole in the roadway of a paved highway, wresting the steering wheel from the hands of the truck driver and causing the truck to leave the paved highway and slide off the banked portion of the highway into a lake, is not caused by "accidental collision * * * with any * * * object," within the meaning of an insurance policy against loss or damage by collision with any "object."

TAYLOR, P. J., dissenting.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Reversed. Opinion filed October 17, 1923. Rehearing denied November 2, 1923. *Certiorari* denied by Supreme Court (making opinion final.)

BURT A. CROWE, for appellant.

JOHN A. BLOOMINGSTON, for appellees.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff truck company brought this action in the superior court of Cook county, basing the action on a policy of insurance issued by the defendant insurance company, seeking thereby to recover the cost of repairing damages to a truck belonging to the plaintiff. At the conclusion of the plaintiff's case, the defendant requested the court to give the jury a peremptory instruction to find the issues in its favor, which motion the court denied. The defendant in-

troduced no testimony. The jury found the issues for the plaintiff, and on this verdict the court entered judgment for the plaintiff in the sum of $2,075. To reverse that judgment the defendant has perfected this appeal.

In support of the appeal the defendant contends that the plaintiff failed to make out its case, by the evidence submitted in its behalf, inasmuch as it was not shown that sworn proof of loss was furnished to the defendant company, as provided by the terms of the policy. The defendant is not in a position to make that contention here. The plaintiff filed an affidavit of claim with the declaration. The defendant filed pleas to the merits, without referring to the proof of loss, or raising any question concerning it. If the provisions of the policy were not complied with, with respect to the filing of proof of loss, the defendant will, therefore, be deemed to have waived the right to defend on that ground. *Modern Woodmen of America v. Davis,* 184 Ill. 236; *Benes v. Bankers Life Ins. Co.,* 282 Ill. 236. The defendant also filed an affidavit of merits, and in stating the nature of its defense therein, no mention was made of any claim that there had been a failure on the part of the plaintiff in complying with the terms of the policy, covering the question of filing proof of loss. The defendant will be confined to the defenses set up in its affidavit. *Reddig v. Looney,* 208 Ill. App. 413.

The policy of insurance upon which the plaintiff based its action provided that the defendant company would not be liable beyond the actual cash value of the property insured at the time any loss or damage occurred and it further provided that such loss or damage should be ascertained according to such actual cash value, with proper deductions for depreciation. The defendant contends that the plaintiff failed to bring itself within this provision of the policy, inasmuch as it failed to show, by competent evidence,

what the actual cash value of the truck was at the time of the alleged loss or damage, and that such value was at least equal to the cost of repairs, to recover which the plaintiff was suing. By its pleading, the plaintiff set up the policy, the alleged damage to the truck and the cost of repairs, which were alleged to be fair and reasonable. By special plea the defendant raised the contention that the value of the truck was less than the repair bill. It was no part of the plaintiff's case to negative that proposition but the burden was on the defendant to establish it as a part of its defense.

A more serious question is presented involving the general proposition of the liability of the defendant insurance company, under its policy, for damages to an automobile truck, which were occasioned in the manner described by the plaintiff's witnesses. On this point the provision of the policy which must be considered is to the effect that it covers damage to the truck insured, "by being in accidental collision during the period insured, with any other automobile, vehicle or object." The evidence shows that at the time the truck covered by the policy in question was damaged, it was being driven from a point in Indiana towards Chicago, over a road known as the Indianapolis boulevard. The truck had been driven over a bridge crossing Wolf Lake. Just beyond the bridge there was "a hole in the road, where the trucks had worn down in the pavement," as one witness described it. This hole was about ten inches deep and sixteen or eighteen inches wide. The bottom surface of the hole was a "conglomeration of stone, brick and dirt." Shortly previous to the occurrence in question there had been a hard rain and the hole was filled with water. The witness quoted above, in testifying, said that one part of the hole was deeper than the other, —"it was worn out with constant traffic." This witness testified that "the hole at the end of the bridge

626 APPELLATE COURTS OF ILLINOIS.

Garford M. T. Co. et al. v. Miller's Nat. Ins. Co., 230 Ill. App. 622.

was a depression, caused by constant pressure of wheels coming down off the bridge and going on their way north. The center of the hole, the deepest part, was ten inches, and gradually came level with the pavement.'' The driver of the truck testified that the right-hand front wheel went into this hole, and, when it did, the steering wheel flew out of his hand and the truck ran off the road into the dirt, there being a space of about a foot between the hole and the edge of the road. He further testified that the truck ran off and he tried to stop it but could not; that when he got over onto the bank, it gave way and the truck slid down the bank into the lake, ''going through a little railing along the side.'' It is not claimed that any damage was caused by striking the railing. Another witness testified that upon going out to the scene of the accident, after it occurred, he saw ''a hole with a very sharp drop right at the edge of the bridge. I would say about a foot and a half or two feet from the edge of the bridge. That started at the end of the bridge and would be about a foot and a half or two feet from there.'' This witness further testified that on the north side of the hole ''it was very sharp, and was, I should say, about four to six inches, very sharp, that the wheels would butt up against, say of brick and asphaltum.''

It is the contention of the plaintiff that its truck was damaged ''by being in accidental collision * * * with * * * an object,'' within the meaning of those words as they appear in the defendant's insurance policy. In support of that contention counsel for plaintiff has referred us to *Hardenburgh v. Employers' Liability Assur. Corporation*, 78 N. Y. Misc. 105, 138 N. Y. Supp. 662, as being ''the only Supreme Court decision applying to the facts'' in this case. That citation is a decision of a judge in the City Court of New York, denying a motion for a new trial. In that case the policy covered damages to

the plaintiff's automobile "if caused solely by collision with another object, either moving or stationary (excluding, however, * * * all loss or damage caused by striking any portion of the roadbed * * *)." In that case, the driver of the automobile, on meeting a team, drove over into the grass below the level of the roadbed and, while endeavoring to return to the road, the automobile was overturned. The judge of the City Court denied the defendant's motion for a new trial, the plaintiff having recovered a judgment, holding that there was a sufficient collision with the shoulder of the roadbed, as the driver attempted to get back on the road, to justify the verdict. It was further held that the point at which the accident happened was not in the roadbed. This same case appears later in 80 N. Y. Misc. 522, 141 N. Y. Supp. 502, where the judgment was reversed by the Appellate Division of the Supreme Court, the court holding that "there was no evidence given of the existence of any object with which the automobile did or could have come into collision." The court pointed out that it was apparent that after the wheels of the automobile got over into the soft dirt, they sank three or four inches into the earth, and as the driver attempted to turn back onto the road, the rear wheel skidded and a great strain was brought upon the front right wheel, which collapsed, all of the spokes breaking off at the hub.

Counsel for plaintiff has further called our attention to the case of *Harris v. American Casualty Co.,* 83 N. J. Law 641. The policy involved in that case insured against loss or damage to an automobile "resulting solely from collision with any moving or stationary object." It was shown by the evidence in that case that the plaintiff's automobile, while being driven across a bridge, went off the bridge, turned upside down, and in that position fell into a creek. The court held in substance that the damages, which

were the basis of the plaintiff's action, had been caused by a collision with a moving object and also with a stationary object,—the moving object being the water in the creek and the stationary object the bed of the creek. We are unable to follow the reasoning of that decision, and, moreover, it does not seem to be applicable to the situation presented in the case at bar, for it is not the plaintiff's contention that the truck in question collided with an object when it landed in the bottom of Wolf Lake, but, rather, when it struck the depression or hole in the road just beyond the end of the bridge. In the *New Jersey* case, the automobile involved was driven clear off the bridge and after falling through the air it landed in the creek. Although the policy in that case covered only damage resulting "solely from collision with any moving or stationary object," the question of how the automobile came to be driven off the bridge does not seem to have been raised nor is it discussed by the court in the opinion.

In *Lepman v. Employers Liability Assur. Corporation*, 170 Ill. App. 379, the policy involved insured the holder against loss from damage to his automobile "resulting from the collision of said automobile with any other automobile, vehicle or object." The claim of the plaintiff in that case was that his automobile had been injured by a collision with a brick. A large part of the argument in that case had to do with the meaning to be given to the word "collision." The court held that the word, as used in that policy, was not to be confined to a case where both of the colliding objects were in motion; and a judgment recovered in the trial court by the plaintiff was affirmed.

There is no contention in the case at bar, on the part of the plaintiff, that the wheels of the track collided with any obstacle, such as a rock or a stone or a brick, in the roadway, thus causing the truck to be damaged. It is apparent from the examination of the

witnesses by counsel for the plaintiff that the plaintiff's position, in the trial of the case, was, and from the argument in the briefs it appears it is the plaintiff's position here, that the "object" with which the truck came into collision was the far side of the hole, that there was not a gradual rise from the point where the hole was the deepest up to the pavement beyond, but that the rise was abrupt. In the first place, we are of the opinion that the description of the hole, as given by the witness, does not bear out that theory, and in the next place, we are inclined to the opinion that it would not change the plaintiff's position if it did. Counsel asked one of the witnesses what the wheel of the truck would come up against at the north side of the hole and the witness answered, "There was a brick foundation there," and upon being asked what the surfacing of the roadway was, he replied that it was "asphaltum."

To determine the question involved on this appeal, we must decide whether the plaintiff's truck was damaged "by being in accidental collision," with "any other automobile, vehicle or object," within the meaning of the provision as thus set forth in the defendant's policy of insurance.

There are several fundamental rules which should be kept in mind in determining that question. The provisions of a policy of insurance should be construed liberally, so as not to defeat, without a plain necessity, the claim of the assured to the indemnity which was the whole object of the contract to secure him. Where the words of a policy of insurance are ambiguous or where, *without doing them violence,* they are capable of two interpretations, that one should be adopted which will sustain the claim of the assured. In determining the meaning of the words used in such a contract and deciding whether they are ambiguous or capable of more than one reasonable interpretation, the words should be taken in

the plain and ordinary sense in which they are generally used and understood with regard to or in connection with the subject-matter involved and they should not be given a strained or violent interpretation.

In our opinion it may not reasonably be said that in going into the depression or hole, described by the witnesses, the violent jerk of the wheels as the truck reached the far side of the hole, causing the steering wheel to get out of control of the driver, the truck was "in accidental collision with" an "object." To make the words used in the policy cover such a state of facts is, in our opinion, to do them violence. It seems perfectly clear when one reads the words as they appear in the paragraph of the policy in question, taking them in their plain and ordinary sense, and the sense in which any reasonable person would understand them, that there can be no doubt as to their meaning, and that they were not intended or expected to cover such an occurrence as the one involved here, or, in other words, it may not reasonably be said that the hole in the pavement or the far side of the hole was an "object" within the meaning of that word as we find it in the insurance policy involved in this case. As far as the evidence shows, in passing through this hole the wheels of the truck came into contact with nothing but the roadway. In our opinion, when a truck or other vehicle wheel comes into contact with some uneven or irregular part of the road, whether it be an elevation or a depression, resulting in the vehicle being thrown off the road, it does violence to the ordinary reasonable meaning of the words to say that it has been in accidental collision with an "object," namely, the uneven spot in the road. There may not be said to be a "collision" (within the meaning of that word as used in such a clause in an insurance policy as the one before us) between two objects which are already in

contact with one another, as the wheel of this truck was with the roadway until after it had passed through this hole.

In *Wettengel v. United States "Lloyds,"* 157 Wis. 433, the policy involved insured against damage to an automobile "by being in collision * * * with any other automobile, vehicle or object, excluding * * * damage caused by striking any portion of the roadbed." We are not inclined to agree with the decision in that case to the effect that a collision in order to come within the terms of the policy "must have been with another automobile, vehicle or somewhat similar object, *ejusdem generis.*" Rather, we are inclined to agree with the decision to the contrary in *Rouse v. St. Paul Fire & Marine Ins. Co.,* 203 Mo. App. 603, 219 S. W. 688.

We are not unmindful of the fact that many automobile accident insurance policies contain a provision which is similar to the one involved here, with a phrase added "excluding * * * damage caused by striking any portion of the roadbed," as in several of the cases to which we have referred. But even where the language of the policy does not contain that clause, as in the case at bar, we are of the opinion that where damage is caused to an automobile by reason of one or more of its wheels passing over a rough spot in the road, whether that spot be a depression or an elevation, there may not be said to have been a collision between such automobile and another object so as to bring the occurrence within the terms of such provision in a policy of insurance as is involved here.

For the reasons stated the judgment of the superior court is reversed.

*Reversed.*

O'CONNOR, J., concurs.

MR. PRESIDING JUSTICE TAYLOR dissenting: The reasoning in the majority opinion shows that there is

doubt as to the meaning of the words "collision" and "object" as used in the policy applied to the facts as shown. It then solves that doubt in favor of the insurance company. In other words, it reverses the rule of interpretation which favors the insured and gives the insurance company the benefit of the doubt.

That the wheel of the truck collided with a mass of matter which projected upward at least ten inches from the bottom of the hole at an abrupt angle is undisputed. But it is claimed that that kind of a collision and that kind of an object are not such as were intended. Just why the common meaning of the words "collision" and "object" should be narrowed down to the deprivation of the insured and for the benefit of the insurance company is not stated. The parties made their contract and ought to be bound by the normal meaning of the words they have used, and if there is any doubt as to that meaning the law says that it should be resolved in favor of the insured. That was done in the *Lepman* case, as the court there held that colliding with a brick on the road constituted a collision. I am, therefore, constrained to dissent.