Dora E. White, Appellee, v. The Penn Mutual Life Insurance Company of Philadelphia, Appellant.

Gen. No. 8,762.

Opinion filed October 13, 1933.

DOBBINS & DOBBINS, for appellant.

LITTLE & FINFROCK, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

This suit was brought on a life insurance policy issued by appellant, which provided for the payment of $2,000 in addition to the face amount of the policy where the death resulted "solely from bodily injuries effected directly and exclusively by external, violent and accidental means." This double indemnity provision is the only part of the policy in question in this suit. The trial was had before the court without a jury, resulting in a finding for appellee and a judgment in her favor for the sum of $2,000, from which judgment appellant appeals.

278

The facts in the case are not seriously in dispute. On August 17, 1931, one Aaron Bray, his girl friend, Dolores Norris, and another young man, drove up to the Prehn's Confectionery in Champaign, and signaled for curb service. Prehn's is located on the southeast corner of Green and Sixth streets. There is a door at the northwest corner right at the street intersection and another on the west side of the building about 20 feet south from the corner. A man named Krabbe came out of Prehn's and began talking with the occupants of Bray's car. Bray and Krabbe quarreled over some remark the latter directed to Miss Norris. When Krabbe left, Bray began walking up and down the street on the west side of Prehn's building. The waiter, John O'Byrne, came out with the drinks and stayed beside the car waiting to be paid. About this time the insured, Robert H. White, came out of the west door and met Bray on the sidewalk. Bray testifies that White came up from the rear and grabbed him by the arm, jerked him around, looked at him for a second, and said to him "Where do you want it?" or "How do you want it?"; that White was standing in front of Bray with his fist clenched; that Bray gave White a shove away from him and that White fell backwards striking his head on the sidewalk or the pavement, and died as a result thereof. He was corroborated in the greater part by Miss Norris. The waiter, O'Byrne, testified that Bray met White just about opposite the car beside which O'Byrne was standing; that the two appeared as friends talking; that White extended his hand toward Bray as if he wanted to shake hands; that he could not hear what was said but saw the two talking together; that he turned toward Miss Norris to hand her a glass of water and while his back was turned he heard a thud, turned around and saw White falling backwards on the sidewalk and saw Bray drawing his hands back.

Appellant contends that the greater weight of the evidence shows that deceased came to his death as the result of an altercation with Bray brought on by his own conduct, and for that reason his death did not result directly and exclusively from accidental means. In this we do not concur. In the case of *Higgins v. Midland Casualty Co.*, 281 Ill. 431, our Supreme Court said: "The proper and true test, in all instances of voluntary action is that defined in the *Barry* case (131 U. S. 121). If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs which produces the injury, it is accidentally caused." *Prehn v. Metropolitan Life Ins. Co.*, 267 Ill. App. 190. The two Illinois cases relied upon by appellant present a different situation. In *Hutton v. States Accident Ins. Co.*, 267 Ill. 267, the plaintiff and one Huddleston had had some trouble earlier in the day. In the evening Hutton went into a restaurant and saw Huddleston sitting at a counter, walked up behind him and without a word, struck Huddleston on the head with his fist, intending to knock him down and out. Huddleston arose and Hutton struck him again. Then Huddleston knocked Hutton, the insured, down, breaking his leg. The court there held that the injury received was the natural and probable result of his voluntary act in making the assault upon Huddleston.

In the other case, *Cory v. Woodmen Accident Co.*, 333 Ill. 175, the deceased was the aggressor in a fight and made advances towards his adversary after the latter had warned him that he would be shot if he did not keep away. The court there held that with the warning Cory had, any man with ordinary intelligence could have reasonably foreseen and expected the results and that the shooting could not be held to be due to an accidental cause.

In the instant case there was no assault, no loud or serious threatening language, no real altercation, and no reason to foresee the serious results that followed. The court had the opportunity to see the witnesses, to observe their demeanor and to judge their impartiality or interest in the outcome of the suit, and we believe he was warranted from the testimony in finding the issues for the appellee, and that the deceased came to his death through external, violent and accidental means. The other errors assigned by appellant are not argued in the briefs, and there being no substantial error in the record, the judgment of the circuit court is affirmed.

*Affirmed.*